## Smith *versus* Bellows.

1. The plaintiff, on the request of the defendant paid, for a share in oil land; alleging that he had been deceived by defendant, he sued him in case and declared in assumpsit, for money had and received. Plaintiff was nonsuited at the trial; the nonsuit was afterwards taken off, and plaintiff permitted to declare in tort for the deceit. *Held,* the cause of action being the same the amendment was proper.

2. The cause of action accrued more than six years before the amendment, but not before the bringing of the suit. *Held,* the cause of action being the same, the Statute of Limitations was not a bar.

3. If the cause of action had not been the same, the Statute of Limitations would have applied.

4. The circumstances showing that by fraudulent imposition the defendant had obtained money, which he ought to return, either form of action might be supported.

February 17th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of July Term 1873, No. 1.

This was an action on the case, brought February 5th 1870, by William H. Bellows against Henry H. Smith. The plaintiff declared in assumpsit for money had and received, and in the other, common counts; the defendant pleaded "non-assumpsit."

The case came on for trial and a jury was called. After some progress had been made in the trial, a nonsuit was entered against the plaintiff. The nonsuit was taken off and the plaintiff was allowed to amend his declaration and declare in tort for deceit. This declaration was filed January 16th 1872, and set out:

That on the 2d day of January, A. D. 1865, Charles Buchanan owned a farm, consisting of about one hundred acres, in Mill Creek township, in Mercer county, and that Enoch Enochs, William H. Elliott, J. F. Bird, and the defendant, contemplating the project of forming an oil company, upon the basis of the farm, to be called the Mill Creek Oil Company, had procured the refusal to purchase it and to raise money to purchase it and to form the company;

[Smith *v.* Bellows.]

they concluded to raise $50,000, by the sale of fifty shares in the company, at $1000 for each share; and for the purpose of inducing the plaintiff to purchase a share, the defendant, on the 7th of March, of the year last aforesaid, intending to deceive, defraud and injure the plaintiff, falsely, fraudulently and deceitfully represented to him that the price to be paid for the farm was $50,000, and if that sum could not be raised in the manner aforesaid, the company would not be formed, and the money paid by the plaintiff would be returned to him; that $10,000 had already been paid for the working capital of the company, and that the defendant had paid for one of the shares $1000. Whereupon the plaintiff, confiding in the representations of the defendant, and not knowing to the contrary, paid him $1000 for one of the shares; whereas the price to be paid for the farm was not $50,000, but only $15,000; nor was the sum of $50,000 raised, but only the sum of $30,000, no part of which was contributed by either the said Enoch Enochs, William H. Elliott, J. F. Bird, or the said defendant, nor had the defendant paid for one of such shares $1000; nor had $10,000 been paid for the working capital of said company. And the plaintiff having afterwards discovered that the representations of the defendant were false and fraudulent, he demands of the defendant to return to him the sum of $1000 so paid by him, yet the defendant, knowing his representations were false and fraudulent, &c., and made to deceive and defraud the plaintiff, has not paid to him the said $1000, to plaintiff's damage, &c., $2000.

The defendant pleaded "Not guilty," and two special pleas— one, that the cause of action did not accrue "at any time within six years before the plaintiff changed his cause of action," &c.; the other, that it did not accrue "at any time within six years next before the commencement of the suit grounded on the said supposed grievances, in manner and form, as the plaintiff has complained against him."

The plaintiff demurred to the first special plea, because it "does not allege that the defendant was not guilty of said grievance within six years next before the said plaintiff brought his said action."

The court entered judgment for the plaintiff on the demurrer.

The case was tried February 17th 1873, before Lynd, J.

The plaintiff testified that, in March 1865, he met defendant at the office of G. Bull, Esq., in Walnut street. Defendant handed him a prospectus of the Mill Creek Oil Company, and asked him to subscribe; he showed plaintiff a subscription list, calling his attention to defendant's name on the list. Plaintiff did not then subscribe, but had an interview afterwards with defendant at his own office; defendant then said the Buchanan farm was offered by the owner for $50,000. It was proposed to raise fifty subscribers

[Smith v. Bellows.]

at $1000 each to purchase it; and if $50,000 should not be subscribed, the company would not go through and plaintiff's money should be returned. Defendant said he had no interest in it, except that he had subscribed and paid $1000; that $10,000 had been subscribed and paid for a working capital, and a committee appointed to visit the property, had reported in favor of buying it at $50,000. Under these representations plaintiff was induced to subscribe. He subscribed and paid $1000. The company went into operation. The first directors were W. H. Elliott, J. F. Bird, Thomas Wire, W. R. White, and the defendant, H. H. Smith. The land was sold under a mortgage which the company made; plaintiff never got any stock; the stock was worthless; he was credited with it; he was a stockholder to the extent of sixteen thousand shares, the amount he had paid for.

After much other testimony for the plaintiff, he gave in evidence a deed, dated March 14th 1865, from Charles Buchanan to the above-named directors, including defendant. Plaintiff then, under objection and exception, gave in evidence a deed, dated March 14th 1865, to the same persons, for the Bird farm; the consideration mentioned in the deed being $50,000, with receipt for the payment of the consideration. Also, the subscription list for "the purchase-money of the 'Buchanan farm,' for the organization of 'The Mill Creek Oil Company,' as per prospectus."

The list contained the names of the defendant and the other directors; also, Enoch Enochs and plaintiff, each for one share.

The plaintiff called J. F. Bird, who testified that Elliott, Enochs and himself purchased the refusal of the "Buchanan and Bird farms;" they were both purchased together for $30,000; his attention was called to the property by defendant, who introduced him to Enochs. About the 1st of January 1865, Enochs, Elliott and defendant, arranged that witness and Elliott should see the property with reference to forming an oil company; after viewing the "Buchanan" and "Bird" farms, they found that Russell and Kneedler held contracts for the refusal of the farms, from their respective owners; after viewing, they concluded there was a prospect of getting oil from the Buchanan farm; up to that point they had been acting for themselves; they had not been appointed a committee to act for anybody; there had been no meeting at which a committee had been appointed. On their return to Philadelphia, they arranged with the defendant to put the Buchanan farm into the company, as the better farm. A meeting was held at the Continental hotel, of persons proposing to form the company; the company was formed on the Buchanan farm.

Under objection and exception, witness testified: "I did not pay $1000 in money; I gave a check for it; it was understood that the check was not to be used, as it was part of my own property; it

[Smith *v.* Bellows.]

was to be returned to me." He further testified: "The defendant, as treasurer, received all the money that was subscribed; I got one-fourth of $20,000 of stock; there was no reserved stock for working capital; the property was put in at $50,000; defendant paid $30,000 in money, the remaining $20,000 was taken in stock; there was not a dollar subscribed for working capital. He got the Bird farm also. I never paid any money, but allowed one-half of my share to go into the company for working capital. We went to look at the farms with a view to purchase for ourselves; nobody else was concerned in it; we purchased the farms from Russell and Kneedler; we had no transactions with Buchanan or Elijah Bird."

The plaintiff then gave in evidence a contract dated January 17th 1865, by which Kneedler and Russell agreed to sell to Elliott, J. F. Bird and Enochs, the two farms for $30,000, to be paid February 15th 1865, when Kneedler and Russell "are to hand over to Enoch Enochs a clear title in fee, to these properties, in trust for the others concerned."

The defendant called W. H. Elliott, who testified as to the purchase by himself, Enochs and Bird.

On cross-examination he said, defendant "became one-fourth owner with our consent; we gave it to him because we met together and agreed to form a company; defendant was in consultation with us as to the purchase of the land."

A meeting was held at the Continental to form a company; at that time the sale was made by witness, Enochs, and Bird, to the gentlemen there, who agreed to form a company. The meeting voted to buy the Buchanan farm for $50,000; witness made the statement as to its being offered for $50,000.

Witness was asked who made the offer. The defendant objected to the question and also to any testimony as to what took place at that meeting between Enochs, Bird and witness, the vendors, and those who became purchasers of the farm, as not being cross-examination and irrelevant.

The objection was overruled and a bill of exceptions sealed.

The plaintiff proposed to show that witness gave a check for his subscription, on an agreement that it was to be returned. The defendant objected to the offer. It was admitted, and a bill of exceptions sealed.

Witness testified: "I paid $1000—my subscription to the purchase of the Buchanan farm. I paid it with the money that was paid in to the company for me; I held an original share, and by my direction it was sold; I gave a check; it was returned when the money was paid, the same as any other profit in any transaction. I did not charge for going out to the farm; they paid me, but I did not charge for it."

The defendant objected to any examination of witness as to

visiting expenses and other miscellaneous expenditures. The court permitted the examination and sealed a bill of exceptions. The witness then testified on those subjects.

The defendant gave other evidence in answer to plaintiff's case, and closed.

In rebuttal, plaintiff having given in evidence the act of incorporation of the Mill Creek Oil Company, dated March 21st 1865, and having proved the minute-book of the company, offered it in evidence. The offer was objected to by the defendant. The court admitted all the minutes previous to the plaintiff's subscription, and excluded those subsequent to it, and sealed a bill of exceptions for the defendant.

G. Bull, Esq., was called by plaintiff, and testified that, after February 1st 1865, a circular was prepared by defendant and signed by witness as secretary of the board. This was the "prospectus" shown to plaintiff at Mr. Bull's office.

The plaintiff offered the circular in evidence. It was objected to by the defendant, admitted by the court and a bill of exceptions sealed.

The circular was headed "Prospectus of the Mill Creek Oil Company." It describes the "Buchanan farm," its situation, its proximity to railroads, its prospects for oil, and other advantages.

The property was offered for $50,000, and it was proposed to obtain fifty subscribers of $1000 each for its purchase, the subscription to be conditional upon raising the whole amount.

The plan of organization, &c., were also set out. The prospectus also gave the names of the directors, of whom defendant was one; he being also treasurer.

The defendant submitted these points:

3. If it appears from the evidence that $50,000 was to be paid for the Buchanan farm, and that said sum, or less than that sum was paid for it by the Mill Creek Oil Company, the plaintiff is not entitled to recover, as he was not injured thereby.

4. If it appears from the evidence that $30,000 only was to be paid, and no more than said sum was paid, the plaintiff would not be entitled to recover in this suit.

5. If the defendant and others are not entitled to retain the Bird farm, or the stock which they received from the company, the plaintiff is not entitled to recover in this action for that reason.

6. If the jury find from the evidence that the defendant represented to the plaintiff, that if the $50,000 could not be raised in the manner proposed, the company would not be formed, and the money paid by the plaintiff would be returned to him; yet the plaintiff would not be entitled to recover upon such statement in this suit.

7. If the working capital of $10,000 was paid in and used by the company, the plaintiff is not entitled to maintain this action.

[Smith *v.* Bellows.]

The foregoing points were refused.

10. If $30,000 only was paid by the company for the land, the plaintiff has not been damaged by the alleged representations of the defendant.

The court charged the jury on this point:

" That, as you may have understood, I have to leave as a question of fact for you. I cannot understand myself, or I would explain to you, how it is that the plaintiff would not have gone into this operation if the defendant had told him that the land was to cost $30,000, when he did go into it when the defendant told him it was to cost $50,000. But whether he would or would not have gone into it—whether that difference did influence him to go into it—I must leave as a question of fact for you. I cannot take it away from you."

The verdict was for the plaintiff for $1000.

The defendant moved in arrest of judgment; the motion was dismissed, and judgment was entered on the verdict.

The defendant took a writ of error, and assigned for error :

1. Allowing the plaintiff to change the form of action.

2. Entering judgment on the demurrer for the plaintiff.

3-9. The ruling on the questions of evidence.

10-15. The answers to the points.

16, 17. Dismissing defendant's motion and refusing to arrest the judgment on the verdict.

*W. S. Price,* for plaintiff in error.—The Act of May 10th 1871, sect. 1, Pamph. L. 265, 1 Bright. Purd. 70, pl. 6, authorizing change in the form of actions should not be extended to cases after the Statute of Limitation has intervened : Shock *v.* McChesney, 4 Yeates 507 ; Bank *v.* Israel, 6 S. & R. 295 ; Wood *v.* Anderson, 1 Casey 407 ; Smith *v.* Smith, 9 Wright 403 ; Trego *v.* Lewis, 8 P. F. Smith 463 ; Stout *v.* Stout, 8 Wright 457.

The act complained of was a wrong and injury to the company, and it must seek the remedy for the benefit of all the stockholders. Individual stockholders are not entitled to cut up and part and divide such a cause of action among themselves, and each maintain a suit upon his supposed share of it : McAleer *v.* McMurray, 8 P. F. Smith 126 ; Caldwell *v.* Boyd, 7 Id. 321; McElhenny's Appeal, 11 Id. 188 ; Simons *v.* Vulcan Oil Co., Id. 202 ; Densmore Oil Co. *v.* Densmore, 14 Id. 50.

The plaintiff's delay in bringing suit should prevent his recovery : Leaming *v.* Wise, 23 P. F. Smith 173 ; Pearsoll *v.* Chapin, 8 Wright 9 ; Negley *v.* Lindsay, 17 P. F. Smith 217. What is reasonable time or undue delay, when the facts are not disputed, is a question of law to be decided by the court.

If a subscription is induced by the fraudulent representations of an officer or agent of a company, the subscription may be avoided

[Smith v. Bellows.]

or rescinded, and the money recovered back from the company: Crossman v. Penrose Ferry Bridge Co., 2 Casey 69; Custar v. Titusville G. & W. Co., 13 P. F. Smith 381.

*R. P. White* (with whom was *H. R. Edmunds*) for defendant.— The only cause of action was that defendant had by fraud got possession of plaintiff's money, and no matter how widely his form of complaint may have been varied, its substance and object was the same. The difference was of form only, and the case was therefore within the statute which is to receive a liberal construction: Knapp v. Hartung, 23 P. F. Smith 290. If the plaintiff adheres to his original cause of action, he may add a count substantially different from the declaration: Cabarga v. Seeger, 5 Harris 514; Schoneman v. Fegley, 7 Barr 433. Plaintiff sues, not for a fraud upon the company, but for a fraud upon himself, and such suit can be maintained by individual stockholders: Kimmel v. Stoner, 6 Harris 155; Kimmel v. Gosling, 2 Grant 125. The plaintiff could not return his stock, for he never got it, and also because it was worthless: Beetem's Adm'r v. Burkholder, 19 P. F. Smith 249; Heath v. Page, 12 Wright 131. Besides this verdict is not upon a rescission of the contract, but for damages sustained by reason of the deceit.

Upon a question of fraud, evidence must be allowed a wide range, and testimony having any bearing, however remote, is admissible: Woods v. Gummert, 17 P. F. Smith 136; Angier v. Angier, 13 Id. 450; Railroad Co. v. Hoge, 10 Casey 214; Kauffman v. Swar, 5 Barr 230. Fraud is not to be considered as a single fact, but a conclusion to be drawn from all the circumstances of the case: Brogden v. Walker, 2 H. & J. 285.

Chief Justice AGNEW delivered the opinion of the court, March 1st 1875.

A careful examination of this record discloses no error for which the judgment should be reversed. In the view of the case taken by the plaintiff in error, that the action lay against the company only, there would be force in some of the exceptions taken at the trial. But the evidence of the plaintiff below presented a case of individual overreaching on part of the defendant, and it was so submitted to the jury, whose verdict establishes this view of the defendant's conduct. In that light we discover no error in the manner the case was treated. If the evidence were insufficient to support this view, or its weight fell upon the other side, the remedy of the defendant was in the court below.

We discover no error in the change of the form of action. The test is in the cause of action, not the Statute of Limitations. If the cause of action is the same declared upon then the suit, *quoad* it, was brought in time. If the cause of action was not the same,

[Smith *v.* Bellows.]

then the action was not brought for it, and the Statute of Limitations would fairly apply. The fact that the first *narr.* was for money had and received (this being the material count), did not make the change from assumpsit to case in deceit, necessarily a change in the cause of action. The same circumstances of fraudulent imposition, showing that the defendant had obtained the money of the plaintiff, which *ex equo et bono*, he ought to return, would support either form of action.

Judgment affirmed.