## APPEAL OF ALICE CHAPMAN.

[ESTATE OF JOHN LEE CHAPMAN.]

FROM THE DECREE OF THE ORPHANS' COURT OF FRANKLIN COUNTY.

Argued May 28, 1888—Decided October 1, 1888.

1. Proof of the payment of money or of an acknowledgment of indebtedness which does not identify the debt, is insufficient to take a claim out of the operation of the statute of limitations.

2. Under § 24, act of February 24, 1834, P. L. 77, a debt established or admitted is a lien against the real estate of a decedent for five years after his decease; but a mere claim is not a lien until first established as a debt.

3. Wherefore, a claim barred by the statute of limitations is not a debt, and may not participate in a distribution of the proceeds of an Orphans' Court sale for the payment of debts: Yorks' App., 110 Pa. 69, 77, (overruling McClintock's App., 29 Pa. 360; McCandless's Est., 61 Pa. 9, and McClintock's App., 1 Cent. R. 635 [3 East. R. 416]), followed.

Statement of Facts.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J.; absent.

No. 5 May Term 1888, Sup. Ct.; court below, No. 33 Orphans' Court 1887.

On October 9, 1885, Margaret Lee Chapman, administratrix c. t. a. of the estate of John Lee Chapman, deceased, filed her account to which certain exceptions were filed, whereupon, when *Mr. H. J. Plough*, was appointed auditor to hear and determine the exceptions and to report distribution.

At the hearing before the auditor on January 20, 1886, a note was presented for allowance on behalf of H. M. F. V. Stamp, which note with its indorsements, was as follows:

$3,530.60.                     Blue Ridge Summit, July 10, 1876.

Eighty days after date I promise to pay to the order of H. M. F. V. Stamp, three thousand five hundred and thirty .60 dollars, at ——— value received.     JOHN LEE CHAPMAN.

[Indorsed.]

Received cash on account twelve dollars.

August 27, 1887.                          H. M. F. V. STAMP.

Received cash on account ten dollars.

October 9, 1880.                          H. M. F. V. STAMP.

It was admitted that the indorsements were in the handwriting of Mr. Stamp. In connection with the note, there was offered a letter from Mr. Chapman to Mr. Stamp, dated at Baltimore, October 8, 1880, transmitting a postal money order for $10, and stating: "I have been dreadfully harassed to pay expenses on Summit property and cannot send you more at this time." The original money order was also produced, and the genuineness of the letter was admitted, but on behalf of Alice Chapman, the testator's widow, objection was made to the allowance of the claim, on the ground that it was barred by the statute of limitations.

John Lee Chapman had died at Baltimore on November 18, 1880, leaving a will which was admitted to probate at Baltimore on December 3, 1880. On March 15, 1883, the register of wills of Franklin county, Pennsylvania, issued letters of administration c. t. a. to Alice Chapman, widow, and to Margaret Lee Chapman, daughter, of the testator. The latter assumed the exclusive management of the trust.

The will gave the testator's entire estate, after the payment of his debts, to his widow and children in equal shares.

On May 4, 1885, there being no power to sell given to the executors, Margaret Lee Chapman, the acting administratrix, presented her petition to the Orphans' Court of Franklin county to sell the real estate of the testator in that county for the payment of debts. In the statement of debts filed with the petition was included the note of Mr. Stamp referred to. Other debts to a large amount, however, were also embraced. No personal estate was reported. On September 7, 1885, the returns of sale of various parcels of real estate were confirmed, the purchase money aggregating $4,797.06.

Margaret Lee Chapman, called by claimant, testified that Mr. Stamp was married to her sister, who died in 1869; that he came to their home in Baltimore in June, 1880 : " We had not heard from him for some time. Father said to me next morning that he supposed the colonel wanted some money on his claim, and that he had none then to give him ; " That she was one of the executors of her father's will : " Col. Stamp came to our house in 1881, and told me of this debt and said he was going to lay it before the Orphans' Court of Baltimore, and said that it was then due and unpaid ; " that her father voted in Baltimore, where he had a position, and went back and forth ; at the time of his death his home was in Franklin county, Pa.

Col. H. M. F. V. Stamp, called in his own behalf, testified under objection that " at the very instant, immediately after Chapman's death " the credit of October 9, 1880, was upon the note.

Upon the foregoing facts the auditor found :

14. The sole ground of objection to Stamp's claim is that it is barred by the statute of limitations. The note was due on October 1, 1876. If the payment of $10 on October 9, 1880, was on this note it is not barred by the statute of limitations. The auditor finds as a fact that the payment of $10 by John Lee Chapman, was upon this particular note now presented to the auditor, and that it was made on October 9, 1880, to H. M. F. V. Stamp, the payee.

15. The auditor also finds as facts that at the time immediately preceding his death, John Lee Chapman was a citizen of the state of Pennsylvania,

16. And that Col. H. M. F. V. Stamp was a citizen of the state of Pennsylvania, on May 4, 1885, and had been for some time previous thereto.

The following were the auditor's conclusions of law:

1. The auditor having found as a fact that the payment of ten dollars on the note of H. M. F. V. Stamp was made on the note now in controversy, he concludes as a matter of law that the note is not barred by the statute of limitations and is entitled to participate in the distribution.[1]

2. The note of H. M. F. V. Stamp was not barred by the statute at the death of John Lee Chapman, and the debt became a lien on the lands in Pennsylvania for five years from the date of Chapman's death. The lands in Pennsylvania were sold by proceedings in the Orphans' Court within the period of five years from Chapman's death, and the claim of Stamp must be allowed out of the fund with the other claims regardless of the fact whether any payments were ever made on the note or not.[2]

3. The auditor bases his second conclusion of law upon the authority of McClintock's App., 1 Cent. R. 635 (3 East. Rep. 416). This case was decided by the Supreme Court of Pennsylvania, after the decision of Yorks' App., 110 Pa. 69, 77. In the decision of McClintock's Appeal above cited the court had specially before them Campbell v. Fleming, 63 Pa. 242.

The facts in the case before this auditor, are in all respects the same as in McClintock's App., 1 Cent. R. 635 (3 East. R. 416). The Supreme Court had no hesitation in allowing the claim in that case and no reason has been shown the auditor why the claim of Stamp should not be allowed here. Stamp has not brought suit against the widow and heirs of Chapman. The proceedings are in the Orphans' Court, and his claim must be allowed.[3]

To the foregoing report and the accompanying distribution awarding to the claimant a pro rata dividend of $1,469.92, Alice Chapman, widow, excepted that the auditor erred:

1–3. In his findings of fact quoted above.

4. In his 1st conclusion of law.[1]

5. In his 2d conclusion of law.[2]

6. In his award made to claimant.[3]

The said exceptions having been argued, the court, ROWE, P. J., filed the following opinion and decree:

I am of opinion that H. M. F. Von Stamp was a citizen of Pennsylvania on May 4, 1885, and thenceforward; that John Lee Chapman at the time of his death was a resident of Baltimore, having his domicil there; that there was the principal administration and here the auxiliary. I think also, that the evidence does not warrant the auditor's 14th finding of fact " that the payment of $10 by John Lee Chapman was upon this particular note." Chapman's letter of October 8, 1880, does not refer to any note. He simply says, " I send you $10, I cannot send more at this time." The indorsement of a credit for $10 in Von Stamp's handwriting as of October 9, 1880, does not identify this note as the claim on which the $10 was paid, for it is not shown that it was made before October 1, 1882, when the six years expired.

I therefore sustain the 1st and 2d exceptions to the findings of fact, and in consequence I must sustain the exception to the auditor's first conclusion of law that Von Stamp's note was not barred by the statute of limitations. He should have found that it was barred: Shaffer v. Shaffer, 41 Pa. 51. It fell due October 1, 1876. Chapman died November 18, 1880 (4 years, 1 month). The six years expired October 1, 1882. Petition for sale of real estate to pay this among other debts, May 5, 1885. Sale confirmed September 7, 1885. And the claim was presented to the auditor January 20, 1886. Upon the authority of Yorks' App., 110 Pa. 69, 77, the statute was a bar.

But the auditor in his second conclusion of law holds that Von Stamp's claim is saved by the acts of assembly making the debts of a decedent a lien on his real estate for five years after his death, and he relies upon McClintock's App., 1 Cent. R. 635 (3 East. R. 416), as an authority directly in point. It is so, and rules this case.

In a former opinion in this case, written before McClintock's Appeal was published, the point being made, I suggested a few reasons in support of a contrary conclusion. It is said, a claim not barred at the testator's death, becomes by his death a lien on all his real estate for five years, and that a debt secured by a lien may be barred without divesting the security

which the lien affords: Mitcheltree v. Veach, 31 Pa. 455. The lien lies in the debt, and the debt is subject to the law which regulates its recovery.

What is the nature of the lien and whence derived? Since 1688 lands have been liable for debts. Until the act of 1705 was passed, it is said the administrator could sell real estate for payment of debts as he could personal estate at common law, without any order of court, or else the creditor could take it in execution. In 1705, the administrator was authorized to sell for payment of debts under the rule and direction of the Orphans' Court. The lien of the creditor on the decedent's land springs from these old acts, which make his land liable for debts and a fund for their payment. And the lien means nothing more than "the right of subjecting the decedent's land to execution after his death either by common law process or in the Orphans' Court:" Lead. Art., 6 W. N. 545, 546; 2 Trickett on Liens, 516. In other words it means that the decedent's land is a fund for the payment of his debts. Until 1794, there was no limit to the time during which the debts of a decedent continued to bind his land. But the act of April 19, 1794, reciting that "inconveniences may arise from the debts of deceased persons remaining a lien on their lands for an indefinite period of time after their decease, enacts that no debts unless secured, etc., should remain a lien on the land longer than seven years after the decease of the debtor. The act of 1797 is the same. The act of February 24, 1834, P. L. 77, enacts that no debts of a decedent, unless secured, etc., shall remain a lien on his lands after his death longer than five years, etc. Thus these acts do not create a lien, but limit a lien before indefinite. And that lien is the liability of the lands to answer for the debts for five years.

But the personal estate is also answerable for the debts, and this does not prevent the running of the statute. Let us suppose that the acts limiting the lien of the debts, had not been passed or unrepealed, and the lien was indefinite. Then a claim not barred at the decedent's death, might lie in wait for twenty years, until the presumption of payment would arise to shut it up in its lair. The lien would not prevent the presumption arising, and for the same reason it would seem ought not to prevent the bar of the statute, both having regard to

loss of means of proof of payment. Suppose a man to die leaving a personal estate ten fold enough to answer every claim, and lands besides. A claim, not barred at his death, is barred afterwards under Yorks' Appeal, and cannot come in on the personalty. Can the creditor ask that the lands of the heirs be sold to pay his claim, because he had a lien on the land? The personalty is the primary fund for the payment of debts. Can the personalty be relieved by the plea of the statute, and the lands remain bound? Campbell v. Fleming, 63 Pa. 245. But further, the contention is that the lien saves the claim, though the statute of limitations bars it. And the reason is because it was an existing, good, enforceable debt at the death of the debtor. But is not that the question? The debt ought to be proved, but cannot be pressed after the six years. The debt of a decedent is a lien, but is the creditor's claim a debt of the decedent? We must not assume that; it is matter of proof: See Trinity Church v. Watson, 50 Pa. 526. The creditor, presenting his claim before the auditor after the six years have run, finds it barred by the statute. If he says it was a valid claim at the debtor's death, the answer is, we cannot tell. You have allowed the claim to sleep until the evidence to disprove it is lost. A debt barred before death is not a debt of the decedent saved by the act of 1834, because it cannot be proved. For the same reason, a debt barred after his death, would seem not to be saved by the act.

The lien saves a just debt, and the statute of limitations enables us to ascertain whether a particular claim is a just debt or not. My attention is called to the fact that Yorks' Appeal was decided May 1, 1885; McClintock's Appeal, November 9, 1885; and the opinion on the re-argument of Yorks' Appeal on January 4, 1886. It is said truly that McClintock's Appeal—the old case in 29 Pa. 360—was not overruled in the first case, but on the motion for a re-argument, and was not referred to in the case of McClintock's Appeal of November 9, 1885, by court or counsel. But though Guthrie for the appellant made a point on the statute of limitations, Stewart (contra) rested wholly on the lien, as did the Supreme Court in its opinion. The case fits ours at all points, and Yorks' Appeal does not affect its principal. But as Yorks' Appeal shows that before a debt is seated on a trust it must be established as a debt, and in

that the statute of limitations has its operation, so I thought that before a debt would be protected by a lien, it must be proved, and in that the statute would be a bar: Yorks' App., 110 Pa. 69, 77. Here Mr. Justice PAXSON says: "But how are we to say that this debt, which was not presented to the executors until twelve years after it matured and nearly seven years after the letters testamentary were granted, was a good debt at the time of the decedent's death? But on the authority of McClintock's App., 1 Cent. R. 635 (3 East. R. 416), the auditor's report is confirmed, and distribution of the fund ordered accordingly.

Thereupon the exceptant took this appeal and assigned as error:

1. The dismissal of the exception.[1]

2. The dismissal of the exception.[2]

3. The dismissal of the exception.[3]

*Mr. John Stewart*, for the appellant:

1. The error of the court below in determining the case upon the authority of McClintock's App., 1 Cent. R. 635 (3 East. R. 416), was in not placing that case within its proper historical period. It belongs to the interregnum, which, beginning with the earlier McClintock's App., 29 Pa. 360, continued for a period of twenty-eight years, and then closed very appropriately with the later case of the same name. But Yorks' App., 110 Pa. 69, 77, followed, and with it came the restoration of legitimate authority and the reinstatement of the act of assembly. The case at bar is to be decided in the light of the restoration. Yorks' Appeal, decided two months after McClintock's App., 1 Cent. R. 635 (3 East. R. 416), brushed aside McClintock's App., 29 Pa. 360; Mitcheltree v. Veach, 31 Pa. 455, and Brown v. Webb, 1 W. 413, and put an end to the strange doctrine that the plea of the statute availed only in a suit at law, and could not be sustained in the Orphans' Court, and declared that such an anomaly could not be sustained by reason or authority.

2. It is not true the debt is fixed at the death of a decedent. It is fixed and established as a debt only when legally proven to be a debt; until then it exists only as a claim. Admitting

the trust character of the estate in the custody of the adminis-
trator, the claim is seated on the trust only when it has been
legally established as a debt. The same reasoning excludes mere
claims from the protection of the statutory lien on lands. Their
character as good " debts at the time of the decedent's death "
must first be established, and this can be done, if the protection
of the lien is desired, by proceeding at law within the statutory
period. The late case of Arndt's App., 117 Pa. 120, sustains
the position here taken, if not in express terms, yet by inference
as unmistakable.

*Mr. W. U. Brewer* (with him *Mr. F. M. Kimmell*), for the
appellee:

1. In appeals from the decrees of the Orphans' Courts, this
court hears and determines the merit of the case and decrees
according to the justice and equity thereof, and the findings of
fact, whether by the court or an auditor, are not binding upon
this court: Thompson's App., 103 Pa. 603. This court, how
ever, gives great weight to the findings of fact by an auditor,
and they stand in the same relation to the case as the verdict of
a jury.

2. In his 14th finding of fact, the auditor had the acknowl-
edgment of the existence of the indebtedness to Margaret Lee
Chapman; the letter inclosing the $10 money order and the
original money order; the note itself with the indorsement of
the credit upon it, and the testimony of the claimant that the
credit was there the instant after the testator's death. The
auditor's ruling upon the admissibility of the claimant's testi-
mony is sustained by Rothrock v. Gallaher, 91 Pa. 108. If
this court sustains the 14th finding of the auditor, it will enti-
tle us to have the decree of the court below affirmed.

3. But the decree of the court below was right, upon the
authority of McClintock's App., 1 Cent. R. 635 (3 East. R.
416). That case was decided November 9, 1885. Yorks' App.,
110 Pa. 69, 77, was decided [argued] May 1, 1885 [October 5,
1885, and January 4, 1886]. Our law assumes that land will
not be required for debts; but when required, the true point of
time at which a debt must be provable, as against land, is the
death of the debtor. If the debt is then a subsisting debt, it
attaches by way of lien to the land. And this rule can have no

Opinion of the Court.

exception, when land as in this case is the only asset left by the debtor for the payment of debts; and, if the debts are liens on the land at the time the sale is confirmed, they are entitled to the fund, no matter how long the interval between the confirmation and the distribution: Arndt's App., 117 Pa., 120.

*Mr. Stewart*, in reply:

The evidence of Mr. Stamp was inadmissible. The offer to prove by him that the indorsement of credit was upon the note "the very instant immediately after Chapman's death," and thereby establish inferentially that the credit was entered during the life of the maker of the note, does not fall within Rothrock v. Gallaher, 91 Pa. 108. The subsequent cases of Foster v. Collner, 107 Pa. 311, and Adams v. Edwards, 115 Pa. 211, define clearly the limits within which that case is an authority.

OPINION, MR. JUSTICE PAXSON:

This was a question of the statute of limitations. The note in controversy bears date July 10, 1876, and is payable eighty days after date. Unless taken out of the statute it was barred October 1, 1882. The maker died November 18, 1880. The order of sale for the payment of debts was granted May 5, 1885, and the sale was confirmed on the 8th of September following. The note was presented to the auditor appointed to make distribution, who allowed the claim upon two grounds, viz.: (a) That the note was taken out of the statute by reason of a credit appearing on the back of the note; and (b) Because the note remained a lien upon the real estate of the decedent for five years after his death, and the claim must be allowed out of the proceeds of the sale of the real estate, regardless of the fact whether any payments were made on the note or not. See his second conclusion of law. Upon exceptions filed, the learned court below reversed the auditor upon the first ground, but sustained him upon the second, and decreed the payment of the note out of the fund.

The learned judge was clearly right as to the first proposition. It is true the auditor found the fact that the payment of the $10 in question was made upon the note in controversy. He found it, however, upon insufficient testimony. There was not enough to submit to a jury. This question does not require discussion.

The court sustained the auditor upon the second question with evident reluctance. Indeed, the learned judge has given us a very excellent argument why the plea of the statute should be sustained, but was constrained to decide the other way by McClintock's Appeal, 1 Cent. R. 635 (3 East. R. 416). This was one of the line of cases following the ruling of McClintock's Appeal, 29 Pa. 360, and which fell with the decision of Yorks' Appeal, 110 Pa. 69. It is not necessary that we should reiterate what was said in the last named case; it is still fresh in the minds of the profession, and we have no idea of departing from it in the slightest degree. We there pointedly overruled McClintock's Appeal, McCandless's Appeal, and the entire line of cases following them. The later McClintock's Appeal, upon which the court below relied, was decided between the first decision in Yorks' Appeal and the subsequent decision upon the motion for a re-argument. The latter is really the decision in that case, and it occurred two months after McClintock's App., 1 Cent. R. 635 (3 East. R. 416), was decided. The latter case fell with the decision in Yorks' Appeal.

In the case in hand, however, much stress was laid upon the act of February 24, 1834, which provides that the debts of a decedent shall remain a lien upon his real estate for five years after his death. It is to be observed, however, that the act of 1834 did not create a lien. It merely limited the extent of a lien, at one time indefinite, and by the act of 1794 restricted to seven years, to the period of five years. It will be noticed, moreover, that the act refers only to debts due by a decedent; it has no reference to mere claims against his estate. A debt established or admitted is a lien against the real estate of a decedent for the period of five years after his decease; a mere claim is not a lien until first established as a debt. When, therefore, a claimant demands the benefit of the statutory lien, he must first show that he has a debt. A debt barred by the statute is no debt at all, and it is begging the question to say that it was a debt at one time, or that the statute had not fully run at the death of the decedent. In the latter case the statute may be tolled, and the lien preserved by commencing a suit within the statutory period. It would be an anomaly to hold that a claim barred by the statute and, therefore, inca-

pable of coming in upon the personal estate, which is the primary fund for the payment of debts, could years afterwards be allowed out of the real estate in the hands of the heirs or devisees.

The decree is reversed at the costs of the appellee.