# Kaufmann's Estate.

*Decedents' estates—Claims against—Evidence.*

1. Very clear proof is required in order to establish a claim against a decedent's estate, alleged to have been due long before he died, but not presented until after that time.

*Statute of limitations — Acknowledgment of debt — Decedents' estates—Orphans' court—No pleadings needed.*

2. The constructive acknowledgment of a debt, arising from part payment within six years before suit brought, is sufficent

from which to infer a promise to pay; but this inference cannot be made as to the particular debt sued for, unless it is clearly, distinctly and unequivocally proved that the payment was made on account thereof. Especially is this so where the claim is not presented until after the death of the alleged debtor.

3. As pleadings are not required in the orphans' court, the statute of limitations may be interposed to a claim there made, at any time during the taking of testimony, even though that defense has not been suggested by anything filed of record.

*Appeals — Executors — Decree of distribution—Amendments— Parties.*

4. Executors, who are only stakeholders of a fund distributed by the orphans' court, have no standing, as executors, to appeal from the decree of distribution.

5. The Supreme Court has power to allow amendments to accurately state the capacity in which litigants appeal, and will do so whenever the error arose through inadvertence, and the amendment is necessary in order to do justice as between the parties.

Argued March 13, 1928. Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 23, March T., 1928, by Edgar J. Kaufmann et al., executors, from decree of O. C. Allegheny Co., Nov. T., 1924, No. 316, dismissing exception to adjudication in estate of Morris Kauffman, deceased. Reversed.

Exceptions to adjudication of MITCHELL, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Edgar J. Kaufmann et al., executors, appealed.

*Error assigned,* inter alia, was decree, quoting record.

*John G. Frazer,* of *Reed, Smith, Shaw & McClay,* for appellants.—Plaintiff did not prove a debt for $100,000 or an obligation to pay her that amount: Hirst's Est., 274 Pa. 286; Reynolds v. Williams, 282 Pa. 148; Fuchs's Petition, 269 Pa. 254; Welsh v. R. R., 181 Pa. 461;

Buck v. Cab Co., 75 Pa. Superior Ct. 440; Waters v. Wolf, 2 Pa. Superior Ct. 200; Clark v. Clark, 174 Pa. 309; Coleman's Est., 193 Pa. 605; Northern Trust Co. v. Huber, 274 Pa. 329; Myers' Est., 248 Pa. 76.

The claim is barred by the statute of limitations: Burr v. Burr, 26 Pa. 284; White v. Coal Co., 266 Pa. 145; Maniatakis's Est., 258 Pa. 11; Rosencrance v. Johnson, 191 Pa. 520; Spangler v. Spangler, 122 Pa. 358; Montgomery's Est., 259 Pa. 412.

The statute of limitations need not be pleaded on a claim presented against an estate: Hirst's Est., 274 Pa. 286; De Haven's Est., 25 Pa. Superior Ct. 507; Stephenson's Est., 256 Pa. 487; Coulter v. Line, 262 Pa. 95.

*Thomas Patterson*, of *Patterson, Crawford, Arensberg & Dunn,* for appellee.—A gift is a transfer of personal property from one person to another, with the intention of vesting the title of the property so transferred in the one to whom it is given: Campbell's Est., 274 Pa. 546.

Words of donation are not always necessary, particularly if it be a natural thing, as between parent and child: Northern Trust Co. v. Huber, 274 Pa. 329.

The gift being from parent to child no explanation is necessary: Clark v. Clark, 174 Pa. 309; Young's Est., 202 Pa. 431; Yeager's Est., 273 Pa. 359; Fuchs's Petition, 269 Pa. 254; Myers's Est., 248 Pa. 76.

The claim is not barred by the statute of limitations: Smull's Est., 9 Pa. Dist. R. 532; Hillborn's Est., 5 Pa. Dist. R. 265; Arndt's App., 117 Pa. 120; Ritchey's Est., 8 Pa. Superior Ct. 527.

OPINION BY MR. JUSTICE SIMPSON, April 9, 1928:

Appellee is a daughter of decedent. At the audit of the account of his executors, she claimed to recover from his estate the sum of $100,000, with interest from the date of his death on August 6, 1917. Evidence was

taken regarding the claim, which was allowed despite objection, and this appeal followed. We are of opinion the decree should be reversed.

It appeared from the evidence that when appellee was married on February 21, 1905, decedent handed to her a four and four-tenths per cent mortgage for $110,000, owing to him by a third party, and said he gave to her $100,000 of it as a wedding present. On May 20, 1905, he formally assigned the mortgage to her. On November 21, 1905, she assigned it to Augusta Kaufman, who, on December 12, 1905, paid the entire consideration of $112,016.66 to decedent. The court below held that this, without more, was sufficient to justify the conclusion that decedent became indebted to appellee in the sum of $100,000, as of the date of his receipt of the $112,016.66. In view of the fact that, so far as the evidence discloses, appellee never made any claim during decedent's lifetime, though he lived for more than eleven years after the alleged indebtedness arose, and of the strict measure of proof required under such circumstances (Gilbraith's Est., 270 Pa. 288; Hirst's Est., 274 Pa. 286), much might be said in antagonism to that conclusion; but we need not consider the point, since, in any event, the statute of limitations bars the claim.

If we were to assume that, on December 12, 1905, decedent was thus indebted to appellee in the sum of $100,000, this liability became unenforceable after December 12, 1911, unless something was said or done to keep it alive. There is no proof that, after the latter date, either decedent or appellee ever referred to the mortgage, to its assignment to Augusta Kaufman, to the consideration paid by her, or to any alleged indebtedness to appellee because thereof. It was shown that, from time to time, decedent paid her various sums of money, ranging from $100 to $2,710, but, so far as appears, they had no relation to the present claim. As accurately stated by the auditing judge: "None of the

payments made by decedent to his daughter can be positively identified with the mortgage.....:.or its interest. There were times when, in December and June of some years, decedent drew checks to his daughter of $2,500 each, but this was not the amount of the semi-annual interest specified in the mortgage, and there is no evidence to show why these payments were made. Mrs. Cotts, who was secretary to decedent and kept his books from 1913 to 1917, was never told by decedent that the various payments made his daughter represented an indebtedness or interest on an indebtedness to her. There is no record in [decedent's] books of any account with [appellee]. The testimony of Mr. Sigal, private secretary to [decedent] from 1907 to 1916, [who drew the checks for those payments] does not throw any light on the character of these remittances or of any [such] indebtedness."

Despite this finding appellee contends that the testimony of Mr. Sigal shows decedent made to her semi-annual payments of $2,500 as interest on the alleged indebtedness, and that this continued until the autumn of 1916. The witness did refer to a number of payments of that amount, but he did not state that any of them was for interest on this claim. On the contrary, his testimony, which was produced by her and not contradicted, would have been a sufficient basis for deciding, and perhaps should have compelled a finding, that her present claim did not exist in 1916: Burke v. Kennedy, 286 Pa. 344. The witness testified that appellee then called upon him, with an account she had prepared, and asked him "to check it up [with decedent's records] and let her know how much is due on her account with her father." He did so, found the accounts tallied, and that the indebtedness at that time was $8,070. It is now contended this sum represented the existing arrearages of interest on the $100,000 indebtedness, but there is no testimony to that effect. On the contrary

the witness said the purpose was "to ascertain how much was due her from" decedent.

There is no evidence of any other supposed recognition of the present claim and there is proof that there was, on several occasions, other indebtedness of decedent to appellee. Hence, in the light of the court's finding that none of those payments can be identified with this claim, its conclusion must have been, not that the checks given by decedent to appellee were presumptively in payment of an existing debt, but that they will be presumed to have been given as payment of interest on this alleged liability, although, as stated, there is no evidence to that effect and there were other debts. All our later decisions hold that such a conclusion is not permissible.

Reviewing the cases which preceded Burr v. Burr, 26 Pa. 284-286, we said in it: "The constructive acknowledgment of a debt, arising from part payment within six years before suit brought, is sufficient from which to infer a promise to pay. But this inference cannot be made until the part payment is clearly established......The better rule undoubtedly is that the acknowledgment must not only be clear, distinct and unequivocal of the existence of a debt, but that it must also be plainly referable to the very debt upon which the action is based. It matters not where the uncertainty lies, whether in the acknowledgment or in the identification, its existence is equally fatal to the plaintiff's recovery......It is said that in the absence of evidence that there was any other note given by the son to the mother, the presumption is that this is the one upon which the payment was made. When it is recollected that this suit was commenced after the decease of the maker of the note, against his administratrix, it is apparent that the absence of evidence proving the existence of another note or notes, does not clearly show that none such was in existence two years before the intestate's decease. The burden was upon the plaintiff to prove

clearly and distinctly that a partial payment was made upon the note sought to be recovered, within six years from the commencement of the action." To the same effect are Barclay's App., 64 Pa. 69; Chapman's App., 122 Pa. 331; Rosencrance v. Johnson, 191 Pa. 520; Barnes v. Pickett Hardware Co., Ltd., 203 Pa. 570; Maniatakis's Est., 258 Pa. 11, 16; and White v. Pittsburgh Vein Coal Co., 266 Pa. 145. As said in Barnes v. Pickett Hardware Co., Ltd., supra, (page 572): "No quality of the payment is more strictly required than that it shall be upon the very debt sued for." It is certain, therefore, that, so far as this record discloses, the statute of limitations barred the claim more than five years before decedent died, and that nothing was said or done thereafter which would allow a recovery.

But, says appellee, the statute was not pleaded, and hence cannot be considered. Neither was the claim pleaded; and the failure so to do was in each case because there are no pleadings in the orphans' court. Nor is there any requirement in that tribunal, by statute, rule or practice, that the nature of the defense to a claim should be stated before the proof regarding it has been produced, or that a paper asserting it must be filed of record at any time. In the present instance, the bar of the statute was interposed as soon as this became necessary. So far as appears, appellee did not seek to learn the nature of the defense at an earlier date, nor was she misled because of the lateness of the objection. We are of one mind, therefore, that the court below should have dismissed the claim, and that we must reverse because of the failure so to do, unless the fact that the appeal was originally taken in the names of "Edgar J. Kaufman, Betty W. Kaufman and The Union Trust Company of Pittsburgh, executors of the last will and testament of Morris Kaufmann, deceased," was so grievous an error as to be beyond relief.

Correctly averring that the executors were only stakeholders, and hence did not have such an interest in the

fund as to entitle them to maintain an appeal (Stine-
man's App., 34 Pa. 394; Hand's Est., 288 Pa. 569), ap-
pellee asked us to quash or dismiss it. Appellants there-
upon filed a petition stating the appeal was through in-
advertence taken in the names of petitioners as execu-
tors......instead of as trustees......or by Edgar J.
Kaufman and Betty W. Kaufman, as individuals." It
is admitted the executors are trustees under decedent's
will, that Edgar J. Kaufman is his son and Betty W.
Kaufman his widow; and that, in those capacities, all
three are legally interested in defeating appellee's claim.
Her answer to the petition did not deny the averment
that the appeal was inadvertently taken in the name of
the executors, but challenged our right to grant leave to
make the amendment, because the time for taking a new
appeal had expired.

As far back as 1718, by the Act of 5 George I, cap.
XIII, it was said that "all writs of error wherein there
shall be any variance from the original record, *or other
defect,* may and shall be amended and made agreeable
to such record, by the respective courts where such writ
or writs of error shall be made returnable." Pursuant
to the requirements of the Act of April 7, 1807, P. L.
163, we reported that the above cited British statute was
in force in this Commonwealth: 3 Binney 599, 625;
Roberts' Digest of British Statutes, 47. All the powers
given by it to the court of King's Bench, as then consti-
tuted, are vested in this court, by virtue of section 13 of
the Act of May 22, 1722, 1 Sm. L. 131, 140; Finney v.
Crawford, 2 Watts 294; Summers v. Kramer, 271 Pa.
189, 197; Carbon County Judicial Vacancy, 292 Pa.
300. In the first of these cases, the writ of error was
sued out in the name of certain terre-tenants, without
specifying a necessary legal party, and, because of those
statutes, an amendment was allowed by directing the
prothonotary to change the body of the writ accord-
ingly. A similar amendment was allowed by us in
Hewitt v. Democratic Publishing Co., 271 Pa. 546. If

it be suggested that appellants only appeared as executors in the court below, and hence there is nothing on its record by which the amendment could be made, it is answered that there, the executors, qua executors, had no more standing to object to the distribution of the funds in their hands, than they have here, and, since no such objection was interposed there, appellee will not be heard to make it for the first time here.

Aside from this, however, it is clear we have a full discretion as to allowing amendments in order that an appeal may be heard on its merits, and hence the only other question to be considered is as to the circumstances which should condition its exercise. In a court of first instance, preparatory to a trial of the issue raised, the capacity in which a plaintiff sues is a matter of importance, because it is a necessary factor in determining what the issue really is. Hence it directly affects the cause of action, and an amendment changing it will not be allowed if the statute of limitations would bar the claim, were a suit then brought in the new capacity: Wright v. Eureka Tempered Copper Co., 206 Pa. 274; Mumma v. Mumma, 246 Pa. 407. But "the test is the cause of action, not the statute of limitations" (Smith v. Bellows, 77 Pa. 441, 447; Wolf v. Wolf, 158 Pa. 621, 631); and if the cause is not changed, the fact that the statute would bar a new action, will not prevent an amendment by adding another party as plaintiff (Holmes v. Penna. R. R. Co., 220 Pa. 189; McArdle v. Pittsburgh Rys. Co., 41 Pa. Superior Ct. 162), or by changing the capacity in which the plaintiff sues: Power v. Grogan, 232 Pa. 387, 397. In an appellate court, however, the cause of action upon which the trial was had, cannot be changed, whether the statute of limitations has or has not then run, for a reversal must result if the issue actually tried did not entitle the successful party to have a judgment or decree in his favor, and an affirmance must follow if it did. Consequently where, as here, a review is sought of the merits of the issue litigated

below, no question can arise regarding the statute of limitations as a bar to the claim itself, and hence an amendment should be allowed whenever the mistake, which it is contended will prevent such a consideration of the appeal, was due to an inadvertence, especially where, as here, it is from a decree of the orphans' court, in which event we are required "to hear, try and determine the [appeal] as to right and justice may belong, and decree according to the equity thereof": Section 22, Orphans' Court Act of June 7, 1917, P. L. 363, 383.

The leave to amend is granted, the motion to quash or dismiss is refused, appellee's claim is disallowed, and the decree of the court below is reversed at her cost.